MASSCE & CO. *v.* UNITED STATES (No. 3363)[1]

United States Court of Customs and Patent Appeals, November 10, 1930

*Brown & Carter for appellant.*

*Charles D. Lawrence,* Assistant Attorney General (*William H. Futrell,* special attorney, of counsel), for the United States.

[Oral argument October 14, 1930, by Mr. Carter and Mr. Futrell]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

Appellant has appealed from the judgment of the United States Customs Court overruling the protest against the action of the collector in assessing duty at the rate of 75 per centum ad valorem,

---

[1] T. D. 44424.

under paragraph 1430 of the Tariff Act of 1922, upon certain organdie,. or cotton, collar and cuff articles invoiced as "non emb'd. hemstitched neckwear." The only claim of the importer in the assignments of error and before us is that the merchandise should be classified under paragraph 919. There were alternative claims in the protest but these will be treated by us as having been abandoned.

The pertinent portions. of the contesting paragraphs are:

PAR. 1430. * * * all fabrics and articles * * * from which threads. have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including straight hemstitching; all the foregoing, finished or unfinished, by whatever name known, and to whatever use applied, and whether or not named, described, or provided for elsewhere in this Act, * * * 75 per centum ad valorem.

PAR. 919. Clothing and articles of wearing apparel of every description,. manufactured wholly or in part, composed wholly or in chief value of cotton, and not specially provided for, 35 per centum ad valorem.

The appraiser's statement, in answer to protest, was general in its nature. He said:

The merchandise consists of neckwear and other articles composed of flax, cotton, wool, silk, or other material, embroidered, scalloped, appliquéd, tamboured or having drawnwork with threads added to finish the openwork.

The Customs Court, after holding, upon the authority of *United States* v. *Hamburger Levine Co.*, 5 Ct. Cust. Appls. 217, T. D. 34362, that the merchandise is not appliquéd, said:

The evidence clearly establishes that the merchandise in question is hemstitched, and there is not any evidence to show that said hemstitching is of that particular kind or character excepted from the latter part of paragraph 1430 of the Tariff Act of 1922.

The brief for appellant says:

Appellant does not dispute the trial court's findings that the articles are hemstitched, but it most emphatically insists that the trial court erred in holding as a matter of law that such hemstitched articles are provided for in paragraph 1430. Hemstitched articles are not named or described in the paragraph, unless they fall within the provision for articles "from which threads are omitted, drawn,. punched, or cut and with threads introduced after weaving to finish or ornament the open work."

Appellant then emphasizes the contention that paragraph 1430 makes no provision for "openwork" or "drawn work" as such but only for articles from which threads have been omitted, drawn, punched, or cut, and points out that no threads in the involved merchandise have been so "omitted, drawn, punched, or cut."

Samples of the merchandise were placed in evidence consisting of a neck piece, or collar, and a pair of cuff pieces. They constitute articles of feminine apparel. They are apparently constructed by cutting

gauzy material to a form and then sewing strips or folds of organdie about half an inch in width, cut on the bias and shaped to fit, upon the background form.

The sewing which fastens the strips or folds of organdie to the background fabric is shown by the testimony to be done by a machine described by the witness as "a single hemstitching sewing machine, which is commonly known as the English hemstitching."

Appellant says in his brief:

> The basic issue in this case is whether or not the merchandise consists of articles from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork    *    *    *.

It appears that in the process of stitching the folds upon the background, or basic form, the needle or other implement makes small holes in the basic fabric and that the threads are, in the same operation, sewed into the materials at a tension which causes these perforations to retain their shape, but these holes are not produced by omitting, drawing, punching, or cutting any thread from the fabric. The threads of the fabric are merely displaced by the stitching instrument so as to form the diminutive openings. There is no thread omitted from the fabric, no thread drawn from the fabric; no thread of the fabric is punched; none is cut.

Gus A. Schmid was the only witness called in the case. He is in business with a Switzerland firm and was the actual importer of the goods here involved. It was by his testimony that the process of manufacture was shown.

On cross-examination there was this testimony:

> Q. I want to ask you this question, and follow it carefully, if you will: Machine hemstitching—not hand, now—machine hemstitching is done by practically three punches set side by side. The center one, called a plunger, pushes the threads of the fabric apart and the two side ones are needles carrying the threads, which simultaneously stitch the edges, holding them apart, so as to give an openwork effect. Is that the way this hemstitching is done?—A. That is the way; yes.

Largely upon the basis of the above-quoted testimony and upon the appearance of the samples themselves, the Government argues that the merchandise "is described in and therefore included in and under that part of the provision in paragraph 1430 reading 'articles    *    *    *    punched    *    *    *    and with threads introduced after weaving to finish or ornament the openwork, not including straight hemstitching.' "

It seems to us that the fallacy of this argument lies in the assumption that the paragraph refers to the *article* which is punched, whereas it means the article *from which threads* have been punched. That is what the statute says *in haec verba*.

246

Because of this, we think, obvious construction of the phrase it does not appear to be necessary to comment upon the argument of the Government based upon the dictionary definitions of "punch" (noun and verb), "punches," and "plunger." Even if we accept as correct the Government's contention that the phrase "appears to be as if it read 'from which threads are *either* omitted *or* drawn *or* punched  *  *  *'" (italics quoted), it would make no difference. The threads are not *punched* from the article; they are merely pressed aside and remain in the article.

The other three words, "omitted," "drawn," and "cut," when taken in connection with the preposition "from," must mean the separation of the threads from the article itself. "Punched," we think, was intended to have the same meaning and was to apply when the threads had been separated *from* the article by a process of punching instead of by drawing or cutting.

The witness was asked:

Q. There is a certain appearance there of openwork, of holes in the fabric. Do you know what causes that?

and answered:

A. That is merely the needle having gone through and, depending on the tension of the machine, of course, the thread will contract a little and leave the hole. That is the same effect if I were to push a needle or pencil through the cloth; it leaves a hole.

We find ourselves, therefore, in accord with the contention of appellant that the merchandise in issue is not drawnwork or openwork in the sense of paragraph 1430, because to be such under that paragraph it must be an article *from* which the threads have been omitted, drawn, punched, or cut. "Openwork" and "drawnwork" are not mentioned as articles in paragraph 1430. The word "drawnwork" is not used at all, and "openwork" is used only to describe a condition in an article produced by omitting, drawing, punching, or cutting the threads of the article.

The only mention of "hemstitching" in the paragraph is apparently to distinguish *straight* hemstitching from some other method or plan of introducing threads "after weaving to finish or ornament the openwork" which has been produced by omitting, drawing, punching or cutting threads from the fabric.

When the articles here involved are in their normal position upon the person of the wearer neither the holes nor the stitching are in view, and, from our inspection of the samples on file, it seems to us that the primary purpose of the threads introduced was not to finish or ornament the holes made in the fabric by pressing the fabric threads aside with needle or punch, but to hold the folds or strips securely in place upon the basic fabric; and it does not seem to us

that the character of the stitching is material upon the issues here involved. It was a sewing of one fabric to another by a very neat bit of stitching; but it was not to ornament the holes, nor to finish the holes, but to attach one piece of cloth to another.

The Government cites us to *Kotzin* v. *United States*, 14 Ct. Cust. Appls. 99, T. D. 41589. We there affirmed the decision of the Board of General Appraisers (now the United States Customs Court) in holding silk hosiery, embroidered by clocking, classifiable under paragraph 1430.

The line of argument appears to be that there is no provision in paragraph 1430 for clocked hosiery of any kind, but, nevertheless, such hosiery was classified under it because the paragraph does provide for "articles embroidered in any manner * * * by whatever name known * * *."

It is therefore argued that by using the phrase "by whatever name known" Congress intended to provide therein *eo nomine* for all articles hemstitched, except those consisting of straight hemstitching.

This argument would impress us more if Congress had mentioned hemstitched articles, or articles hemstitched, therein, but that is one thing, at least, which Congress did not specifically mention in this perplexing paragraph. It did mention "articles embroidered," etc., and articles treated in other ways, such as tamboured, appliquéd, scalloped, or ornamented, and so clocked hosiery, being an embroidered article, was held classifiable thereunder, but the only mention of hemstitching is, as we have endeavored to point out above, not as descriptive of an article, but as descriptive of a method of introducing threads into openwork or drawnwork produced as therein described.

The present case is not, therefore, analogous to the *Kotzin* case, *supra*, and is not controlled by the decision there.

By the same process of reasoning we must reject the applicability here of the Government's argument that "the provisions in paragraph 1430 are so framed as to invade all other provisions of the act as to merchandise similar to that described therein." We have no quarrel with this as a correct statement of the law, but it is not applicable here upon any "hemstitching" theory, for the simple reason that articles are not included in the paragraph solely by reason of their being hemstitched. Paragraph 1430 is not a catchall or basket paragraph; it has its limits, broad as are its terms, and the use of the word "hemstitching," as it is therein used, may not properly be construed to bring all hemstitched articles under it, whether the hemstitching be straight or otherwise.

Since no *threads* were omitted, drawn, punched or cut *from* the article, it follows that no openwork or drawnwork, as described in, or contemplated by, the statute, was produced in the article. There-

fore, there was no statutory openwork to be ornamented or finished by the insertion of threads in any manner, whether by straight hemstitching, some other kind of hemstitching, or otherwise. The only articles classifiable under the paragraph solely because of hemstitching are those "from which threads are omitted, drawn, punched or cut" and which have threads introduced to ornament or finish the openings made by such processes, the introduction of such threads being by some method other than straight hemstitching. The articles at issue, therefore, would not belong under the paragraph no matter what the character of the particular stitching under discussion may be. Hence the Customs Court fell into error in holding that by reason of the stitching, which they found to be hemstitching, the goods were classifiable and dutiable under paragraph 1430. The protest should have been sustained, and paragraph 919 applied.

Accordingly, the judgment of the Customs Court is *reversed* and the cause *remanded* for action in accordance herewith.